**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| DARRYL L. RIDDLE, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 14-CV-0944-FJG |
| | ) |
| SERGEANT TIMOTHY RIEPE, et al., | ) |
|     Defendants. | ) |

# ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. No. 44), which is considered below.

**I.     Background**

Plaintiff Darryl Riddle filed this lawsuit against Sergeant Timothy Riepe and Officer Richard Robinson on October 28, 2014. On January 30, 2015, plaintiff filed an amended complaint (Doc. No. 9), naming as defendants. Defendants Sergeant Timothy Riepe and Officer Richard Robinson, the Board of Police Commissioners of Kansas City, Missouri through its members Alvin Brooks, Michael Rader, Angela Wasson-Hunt, David Kenner, and Mayor Sylvester "Sly" James, and Kansas City, Missouri Police Chief Darryl Forté. Plaintiff asserts the following claims in the amended complaint: Count I: Wrongful Arrest and Detention under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States against Defendants Riepe and Robinson; Count II - State Law False Arrest against Defendants Riepe and Robinson; Count III - State Law Malicious Prosecution against Defendants Riepe and Robinson; Count IV – Excessive Force in violation of the Fourth and Fourteenth Amendments against Defendant Riepe; Count V - State Law Battery against Defendant Riepe; Count VI - Conspiracy to Fabricate under Fourteenth Amendment 42 U.S.C. §

1983 against Defendants Riepe and Robinson; Count VII - Fabrication of False Justification for Arrest under Fourteenth Amendment and 42 U.S.C. § 1983 against Defendants Riepe and Robinson; and Count VIII - Deprivation of Constitutional Rights Resulting from Official Policies, Procedures, Practices, Customs, and Usages under 42 U.S.C. § 1983 against Defendants Brooks, Rader, Wasson-Hunt, Kenner, James and Forté.

On March 13, 2015, plaintiff filed a notice of voluntary dismissal as to defendant Kenner and all claims against Kenner were dismissed on March 23, 2015. See Doc. Nos. 11 and 15. On February 19, 2016, defendants filed the pending motion for summary judgment. Doc. No. 44. Defendants argue, generally, that (1) the "wrongful arrest and detention" claim (Count I) fails because the officers had at least arguable probable cause to arrest Plaintiff for resisting, and therefore qualified immunity applies; (2) the excessive force claim (County IV) fails as a matter of law because Sergeant Riepe was objectively reasonable in restraining Plaintiff, or, in the alternative, it was not "clearly established" that force could not be used, and thus qualified immunity applies; (3) the *Monell* claim and the "conspiracy" claims (Counts VI, VII, and VIII) fail because such claims depend upon an underlying violation, and here there is none; and (4) official immunity bars the state law claims (Counts II, III, and V).

In response to the pending motion for summary judgment (Doc. No. 52), Plaintiff Riddle indicated that he would abandon Counts I, II, IV, V, and VIII. However, he indicated he will continue to pursue his state law claim for malicious prosecution (Count III) as well as his claims under 42 U.S.C. § 1983 for civil conspiracy to fabricate evidence to support a false charge (Count VI) and fabrication of evidence and false

2

justification for arrest (Count VII). Given that Count VIII has been abandoned, all claims against Defendants Brooks, Rader, Wasson-Hunt, James and Forté must be dismissed.

The Court turns to the facts of this case and the claims against defendants Robinson and Riepe.

## II.  Facts

On October 17, 2013, Defendant Officer Richard Robinson observed Plaintiff Darryl Riddle's cousin, Jereal McKinney, driving a car with an expired tag. Defendant Robinson attempted to conduct a traffic stop, but Mr. McKinney drove to a driveway at 5804 East 96th Terrace. Plaintiff lived at 5804 East 96th Terrace. Prior to that night, Plaintiff had never had any encounters with Officer Robinson, nor had he had interactions with Defendant Sergeant Timothy Riepe or Officer Kyle Oldham.

Plaintiff knew that police were at his residence when he saw police lights. When Mr. McKinney exited the vehicle at 5804 East 96th Terrace, he attempted to walk to the back of the vehicle. Defendant Robinson followed Mr. McKinney to the back of the vehicle, reaching for Mr. McKinney and then taking him down when they reached the other side of the vehicle. Plaintiff came out of the house and saw Defendant Robinson and Mr. McKinney on the ground wrestling. Plaintiff's aunt and two male cousins also went outside to see what was transpiring. One of the male cousins was shouting "Get off my brother." Plaintiff walked to within ten feet of Defendant Robinson and Mr. McKinney and stayed there.

Next, Plaintiff observed Officer Oldham exit his vehicle and walk from his police car toward Plaintiff. Around that time, the aunt and two cousins went back inside, but Plaintiff remained outside. Officer Oldham walked towards Officer Robinson and Mr. McKinney. Plaintiff was facing his cousin and Officer Robinson, watching them, and

3

testified that he did not see Officer Oldham when he approached Plaintiff's immediate vicinity. Part of Officer Oldham's job at that point was to allow Officer Robinson room to do his job and to secure the scene. Officer Oldham testified he observed Plaintiff standing close to Officer Robinson. Plaintiff was standing on Officer Robinson's gun side, and was standing less than ten feet from Officer Robinson with his hands behind his back.

Without speaking first to Plaintiff, Officer Oldham reached out to pat down or frisk Plaintiff. Plaintiff said "stop touching me," after Oldham had already reached for his pocket. Plaintiff testified that the first indication he had that Oldham was close to him was when Plaintiff felt Oldham grab his pocket, testifying that Oldham was out of Plaintiff's field of vision at the time. Plaintiff testified he was surprised by Oldham's actions, as he had no indication that a stranger was going to put his hand in Plaintiff's left front pants pocket, and this is what caused Plaintiff to step back from Oldham. Officer Oldham then said: "I'm trying to pat you down," and grabbed at Plaintiff's pocket a second time. Plaintiff said "stop touching me" more than once as well as "I'm at home" or "this is my home," and pulled away from Officer Oldham. Plaintiff testified Oldham then said, "You're out here, so I have to pat you down; make sure you have nothing on you." Plaintiff continued to step away from Officer Oldham, and moved his hands from behind his back to the front at waist level. Plaintiff initially prevented Officer Oldham from taking his left arm by pulling it away.

Defendant Riepe arrived at the scene after Officers Robinson and Oldham. He had driven to the scene after he had heard Defendant Robinson call for backup. Defendant Riepe testified he observed the interaction between Plaintiff and Officer

4

Oldham. Defendant Riepe described the scene as Plaintiff resisting being frisked. At deposition, Defendant Riepe described what he observed as follows:

> I saw [Mr. Riddle] take a step back into a power stance, also known as a boxing stance. That's how people -- that's how people punch, is when they take a step back or -- or take a step forward to generate power. His arms -- I saw his arms move up, his elbow move up, his back arm move up, and I saw him sidestep Officer Oldham twice, and I heard Officer Oldham tell him, hey, I'm just patting you down to make sure you don't have any weapons on you.

Riepe Depo. 109:8-17. Plaintiff, however, disputes that he was assuming a "power stance" or "boxing stance." Defendant Riepe then took Mr. Riddle down to the lawn. Defendant Riepe explained his actions as follows:

> My explanation is his resistance to be frisked. He was standing right next to two officers, and he could have struck either one. He sidestepped ... Oldham's attempt to frisk him ... and he took a – he took a step back and continued to move away, took a step back to where he could have attacked.

Riepe Depo. 109:23-110:6. Defendant Robinson caught Defendant Riepe's movement in his peripheral vision when Riepe emerged from the lights of the vehicle and was moving to make contact with Plaintiff. Defendant Robinson testified that it was in the split second before Defendant Riepe made physical contact with Plaintiff Riddle that Defendant Robinson first saw Plaintiff. Until that point, Defendant Robinson had not even seen Plaintiff.

Plaintiff was down on the ground for about a minute. No officers struck Plaintiff, and he received no physical injuries. Plaintiff reported that afterward he stood handcuffed for quite a while, however. Plaintiff testified that Defendant Robinson, Oldham, and Defendant Riepe stepped off to the side to have a conversation while Plaintiff was standing handcuffed in front of Defendant Robinson's car. Plaintiff testified

he heard the three talking about him and explaining to each other what had happened. Plaintiff heard one of them – he assumes it was Oldham speaking to Defendant Riepe – mentioning "that's when you took him to the ground." He also heard someone mention the angle of the camera. Plaintiff then heard one of them make some reference about arresting him and taking him to jail. Plaintiff believes he heard Defendant Riepe say, "Take him in" or words to the effect of, "Well you better take him in." The officers did not tell Plaintiff at that time what charges would be filed against him.

Video evidence has been presented as to the arrest. Beginning at 9:10:10 p.m. on the video, someone can barely be heard asking, "Did that guy give you any s__t?" and Defendant Robinson responded, "He didn't give me any s__t. I didn't see him behind me until Kyle started talking to him. Uh, I'd already gotten my guy cuffed up and had him back on the bumper." The three continue discussing the situation until 9:11:47. Video at 9:10:10 to 9:11:47. For a period of time, Defendant Robinson steps out of view of the camera, but at 9:14:58 Defendant Robinson returns, talks to Plaintiff for a few seconds to tell him he is being arrested for hindering, and then grabs Plaintiff by the shirt and takes him out of the view of the camera. By this time, a decision has been made to charge Plaintiff, and he was taken and put inside the patrol wagon.

At some point, Defendant Robinson turned off the microphone to have a conversation with Defendant Riepe. Robinson and Reipe admit that it is possible that Robinson turned off the microphone either because Defendant Riepe had said or had gestured to Defendant Robinson to turn off the microphone. Defendant Robinson testified that while the microphone was off, they talked about the charges Defendant Robinson had on Plaintiff Riddle and McKinney, but then agreed that they had already settled – audibly on the video – that McKinney would be getting two traffic tickets and a

6

resisting arrest. It was while the microphone was off that there "would have been a discussion as to whether [Robinson] was going to write the hindering or Oldham was going to write the hindering" on Riddle. Plaintiff was standing there during the discussion.

Defendant Robinson had explained to Defendant Riepe that he did not even see Plaintiff behind him until he heard Oldham speaking. Defendant Robinson testified that at that point, he decided Plaintiff was hindering Defendant Robinson in part because Plaintiff had caused a substantial action to make Defendant Robinson stop conducting the investigation that he was doing at the time by causing Defendant Robinson to turn around and watch what Defendant Riepe and Oldham were doing with Plaintiff. But, Defendants Robinson and Riepe also considered that Plaintiff was potentially resisting Oldham. Even though the ordinance covers both hindering and resisting, when a ticket is written, the officer has to specify what the act was that constituted the violation. Some acts would constitute resisting, but not hindering. Other acts can constitute just hindering. And some acts can be both hindering and resisting. Defendant Robinson testified that part of the discussion Defendant Robinson had with Defendant Riepe was about how to phrase the charge against Plaintiff. The final decision to charge Plaintiff was Defendant Robinson's, but Defendant Riepe would have given Defendant Robinson direction.

Defendant Robinson wrote the report. In the fourth paragraph on the third page of the report, Defendant Robinson wrote:

> PO Oldham R-535 arrived as back-up and he made contact
> with Arrest 2.

Robinson Report at 3.[1] Robinson's Report continued:

> During the contact, PO Oldham advised him that he was going to frisk him, due to him refusing to leave and being in close proximity to me and Arrest 1.

Robinson Report at 3.[2] Robinson also wrote:

> During the attempted frisk Arrest 2 pulled away from him and stated "I don't want you to touch me".

Robinson Report at 3.[3] Robinson's Report stated:

> PO Oldham explained to Arrest 2 [Riddle] the reason for the frisk and attempted to frisk him again but he again pulled away.

Robinson Report at 3.[4] Robinson knew from his training that what he had written in the next to the last paragraph on page three of his report would all be considered hearsay in court. Robinson Dep. at 113:11-16. Robinson wrote the Citation/Summons for "hinder, obstruct, molest, resist or otherwise interfere . . ." himself. Robinson Dep. at 114:3-7; 114:16-18.

Robinson also prepared the General Ordinance Summons (GOS). Robinson Dep. at 116:24-117:4; Pfs' Exhibit 3, GOS and Municipal Court Documents. The charge was a violation of Code of Gen. Ords. § 50-44A. The facts recited in the GOS as supporting the charge were:

---

[1] Plaintiff notes that the report was based on what Oldham told Robinson, and that Robinsons did not see that himself. Robinson Dep. at 94:24-95:9.

[2] Again, this is based on what Oldham told Robinson. Robinson Dep. at 95:10-25.

[3] Again, the report is based on what Oldham told Robinson. Robinson Dep. at 96:23-97:18.

[4] Again, this statement is based on what Oldham told Robinson. Robinson Dep. at 97:19- 98:11.

> *PEN SEC 1-17; OBSTRUCT OR RESIST PUBLIC SAFETY OFFICER, EMPLOYEE, OR INSPECTOR - ID HINDER, OBSTRUCT, MOLEST, RESIST OR OTHERWISE INTERFERE WITH KANSAS CITY PUBLIC SAFETY OFFICER, EMPLOYEE OR INSPECTOR IN THE DISCHARGE OF HIS OFFICIAL DUTIES, TO WIT: APPROACH AND COME IN CLOSE PROXIMITY TO ARRESTING OFFICER AND ARREST[EE] FAILING TO COMPLY WITH VERBAL COMMANDS OF OFFICER.*

Pf's Exhibit 3 at 1.

The ordinance reads as follows:

> **Sec. 50-44. - Obstructing or resisting public safety officer, employee or inspector.**
>
> (a) Any person who shall in any way or manner hinder, obstruct, molest, resist or otherwise interfere with any city public safety officer, employee or inspector, including, but not limited to, any firefighter or other fire suppression employee, fire prevention inspector, health inspector, building code inspector, zoning inspector, property maintenance or nuisances code inspector, illegal dumping inspector, regulated industries investigator or animal control officer, any employee or official of the metropolitan ambulance services trust or the ambulance contractor providing ambulance service for the metropolitan ambulance services trust, or any officer of the city police department or any member of any other law enforcement agency or police force, in the discharge of his/her official duties shall be guilty of an ordinance violation.

(Code of Gen. Ords. 1967, § 26.35; Ord. No. 941435, § 5, 11-17-94; Ord. No. 070720, § 1, 7-12-07) State Law reference - Similar provisions, RSMo 575.150.

After the arrest, plaintiff was taken to a police wagon. Plaintiff was booked that night and bonded out and released at 4:41 in the morning. Ultimately, the prosecutor dismissed the charges.

### III. Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of

9

law. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

For qualified immunity cases, however, "once the predicate facts have been established, … there is no such thing as a 'genuine issue of fact' … The conduct was either 'reasonable under settled law in the circumstances,' or it was not … ." Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991)) (citation and alterations omitted). The "predicate facts" include only the relevant circumstances and the acts of the parties: conclusions or arguments about the *reasonableness* of those circumstances or those actions are *not* genuine disputes of material fact that would preclude summary judgment. Id.

IV. Discussion

    A. **Count I: Wrongful Arrest and Detention under 42 U.S.C. § 1983**

Defendants argue that qualified immunity precludes the claims against them for wrongful arrest and detention in Count I of the Complaint. Qualified immunity shields government officials from liability for civil damages in performing discretionary tasks unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When deciding the issue of qualified immunity, a court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Pace v. City of Des Moines, 201 F.3d 1050, 1055 (8th Cir. 2000) (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)).

Defendants indicate that at a minimum, they had arguable probable cause to arrest Plaintiff Riddle for resisting arrest. A false arrest claim cannot succeed when there was probable cause. Arnott v. Mataya, 995 F.2d 121, 124 (8th Cir. 1993). "The standard for arrest is probable cause, defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111-12 (1975). However, for qualified immunity analysis, the standard for probable cause is less demanding, and "the officers are immune from suit if they had a mistaken but objectively reasonable belief that [Mr. Riddle] had committed a criminal offense." Ransom v. Grisafe, 790 F.3d 804, 813 (8th Cir. 2015) (internal quotation marks omitted). Immunity applies, therefore, when there is merely arguable probable cause for the arrest. Id.

In response to defendants' argument that probable cause existed for the arrest, plaintiff indicates that he abandons his claims in Count I of the Complaint. See Doc. No. 52, p. 2. Accordingly, summary judgment is granted on Count I of the Complaint.

11

### B. Count II - State Law False Arrest against Defendants Riepe and Robinson

Defendants move to dismiss plaintiff's state law false arrest claims due to official immunity. Under Missouri law, official immunity "'protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary [as opposed to ministerial] acts.'" K.B. v. Waddle, 764 F.3d 821, 824 (8th Cir. 2014) (quoting Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008)). In response to the motion for summary judgment, plaintiff indicates that he abandons his claims in Count II of the Complaint. Therefore, summary judgment will be granted on Count II of the Complaint.

### C. Count III - State Law Malicious Prosecution against Defendants Riepe and Robinson

Defendants move to dismiss plaintiff's state law malicious prosecution claims due to official immunity. Under Missouri law, official immunity "'protects public employees from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary [as opposed to ministerial] acts.'" K.B. v. Waddle, 764 F.3d 821, 824 (8th Cir. 2014) (quoting Southers v. City of Farmington, 263 S.W.3d 603, 610 (Mo. 2008)).

In response, plaintiff argues that official immunity does not apply to intentional discretionary acts done in bad faith or with malice. See State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 446 (Mo. banc 1986). Plaintiff asserts that defendants Riepe and Robinson committed the intentional tort of malicious prosecution based on plaintiff's arrest, and that they conspired to fabricate false claims, false justification for the arrest, and false evidence to support the charge. Plaintiff argues that these acts were done with bad faith or malice, and questions of material fact remain for trial.

12

In their reply, however, defendants note that their motion for summary judgment and the suggestions in support thereto established that the arrest was supported by probable cause, and plaintiff conceded these arguments and abandoned the false arrest claim (Count I). To prevail on a malicious prosecution claim, a party must prove six elements: (1) commencement of an earlier suit against the party; (2) instigation of that suit by the adverse party; (3) termination of the suit in the party's favor; (4) lack of probable cause for filing the suit; (5) malice by the adverse party in initiating the suit; and (6) damage sustained by the party as a result of the suit. Copeland v. Wicks, 468 S.W.3d 886, 889 (Mo. banc 2015). Defendant notes that, as existence of probable cause is a necessary element of the malicious prosecution claim and plaintiff has conceded that probable cause exists, plaintiff's malicious prosecution claim must be dismissed. The Court agrees with defendants; plaintiff's concession that probable cause existed for his arrest means that his malicious prosecution claim must also fail. Therefore, summary judgment is granted on Count III of the Complaint.

### D. Count IV – Excessive Force in violation of the Fourth and Fourteenth Amendments against Defendant Riepe

Defendant argues that the excessive for claim fails because Sergeant Riepe was objectively reasonable in restraining Mr. Riddle, or, in the alternative, that is was not "clearly established" that force could not be used in this situation and thus qualified immunity applies. In response to the motion for summary judgment, plaintiff indicates that he abandons his claims in Count IV of the Complaint. Therefore, summary judgment will be granted on Count IV of the Complaint.

### E. Count V - State Law Battery against Defendant Riepe

Defendants move to dismiss plaintiff's state law battery claim against Riepe due to official immunity. In response to the motion for summary judgment, plaintiff indicates

that he abandons his claims in Count V of the Complaint. Therefore, summary judgment will be granted on Count V of the Complaint.

    **F.    Count VI - Conspiracy to Fabricate under Fourteenth Amendment 42 U.S.C. § 1983 against Defendants Riepe and Robinson and Count VII - Fabrication of False Justification for Arrest under Fourteenth Amendment and 42 U.S.C. § 1983 against Defendants Riepe and Robinson[5]**

In their motion, defendants argue that these claims fail because they are dependent upon an underlying violation. Because the excessive force and wrongful arrest claims fail, defendants argue, the conspiracy claims must fail as well. See White v. McKinley, 519 F.3d 806, 814-15 (8th Cir. 2008) ("The plaintiff is ... required to prove a deprivation of a constitutional right ... in order to prevail on a § 1983 civil conspiracy claim."). In response, plaintiff argues that defendants have ignored the possibility of a constitutional violation based on fabrication of evidence. Plaintiff indicates that it was clearly established as of October 12, 2013, that fabricating evidence and a false justification for arrest is a Fourteenth Amendment violation. See Winslow v. Smith, 696 F.3d 716, 732 (8th Cir. 2012)(recognizing a claim for manufacturing of false evidence in a case wherein defendants allegedly violated due process rights of four plaintiffs by coaching witnesses to create false testimony, and then using that false evidence in order to coerce the plaintiffs into pleading guilty); Livers v. Schenck, 700 F.3d 340, 351 (8th Cir. 2012) (noting, in a case involving officers coercing a murder confession from a mentally retarded man, that "Intentionally or recklessly failing to investigate other leads or manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's Due process clause"); Moran v. Clarke, 296 F.3d 638, 648 (8th Cir. 2002) (denying qualified immunity where investigators purposely ignored

---

[5] As both parties treat these two counts together in their respective motions, so does the Court for ease of analysis.

14

exculpatory evidence, pressured witnesses to incriminate a specific person, and manufactured evidence).

Here, plaintiff argues that the evidence demonstrates that the officers fabricated evidence in order to support the arrest of Riddle. To support this claim, plaintiff notes he was charged with hindering by approaching and coming into close proximity of Robinson and for "failing to comply with verbal commands of officer." Plaintiff, however, argues that Robinson did not hear or see plaintiff standing nearby while he was dealing with the other arrestee, so he could not have been hindered by plaintiff. Furthermore, plaintiff argues that he had not failed to comply with any officer's verbal command, and therefore defendant Robinson's report was false. Plaintiff argues that the true reason he was charged was because Riepe had used force on Riddle in taking him to the ground, and therefore the charge would be used to justify his use of force and diffuse any claim that he had used excessive force on Riddle.

In reply, defendants note again that plaintiff abandoned his false arrest claim in Count I of the complaint. Additionally, plaintiff has abandoned his excessive force claim in Count IV of the complaint. Defendants argue that the presence of probable cause for the arrest ends the inquiry as to fabrication of evidence. Defendants indicate that plaintiff does not actually argue that the officers fabricated evidence; instead, his argument is that the officers labelled his conduct incorrectly as "hindering." Defendants argue that the "fabrication" argument fails because they had arguable probable cause to arrest plaintiff for hindering Officer Robinson, supporting qualified immunity. <u>Ransom v. Grisafe</u>, 790 F.3d 804, 813 (8th Cir. 2015). Additionally, plaintiff does not dispute in relation to Count I that probable cause existed for resisting arrest. Under Eighth Circuit law, "The arrest was lawful ... if the [officers] had probable cause to believe [Mr. Riddle]

15

had violated any applicable statute, even one not contemplated by the [officers] at the moment of arrest." Keil v. Triveline, 661 F.3d 981, 985-86 (8th Cir. 2011). See also Copeland v. Wicks, 468 S.W.3d 886, 891 (Mo. 2015), reh'g denied (Sept. 22, 2015) (further noting that, when analyzing whether false statements were material to a finding of probable cause, courts "reconstruct the supporting affidavit without the false statements and determine if a corrected affidavit would still support probable cause for an arrest"). Furthermore, under the cases cited by plaintiff, "The Fourteenth Amendment guarantees substantive due process, which prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." Moran v. Clarke, 296 F.3d 638, 643 (8th Cir. 2002). Defendants argue that it does not shock the conscience to refer to "resisting" as "hindering." Finally, to the extent that plaintiff complains that Defendant Robinson relied on hearsay from Officer Oldham in writing the police report, it has long been held that probable cause may be based on hearsay. Franks v. Delaware, 438 U.S. 154, 165 (1978); Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998).

When examining plaintiff's fabrication claim, it is apparent to the Court that very little in Defendant Robinson's report could be considered "false." A factfinder might conclude that the sentence "During the contact, PO Oldham advised him that he was going to frisk him, due to him refusing to leave and being in close proximity to me and Arrest 1," placed before the sentence indicating that Oldham touched plaintiff, implies that Oldham spoke to plaintiff before touching him. That is inaccurate; Oldham did not speak to plaintiff prior to the initial touch. However, even if one were to reconstruct the affidavit to clarify that Oldham did not speak to Plaintiff before touching him, Plaintiff still reacted to Oldham, moved away from Oldham, and did not comply with Oldham's later

16

directive that he needed to frisk him, resulting in Defendant Riepe taking Plaintiff to the ground. Reconstructing Officer Robinson's report to remove any false implication that Oldham spoke before touching plaintiff still results in a report that supports arguable probable cause for defendants to arrest plaintiff for resisting arrest. Furthermore, the Court agrees with defendants that the content of the report does not "shock the conscience." Plaintiff's claims for fabrication of evidence and conspiracy to violate plaintiff's civil rights, as contained in Counts VI and VII of the complaint, therefore, fail. Summary judgment is granted on Counts VI and VII of the complaint.

> **G. Count VIII - Deprivation of Constitutional Rights Resulting from Official Policies, Procedures, Practices, Customs, and Usages under 42 U.S.C. § 1983 against Defendants Brooks, Rader, Wasson-Hunt, Kenner, James and Forté**

In response to the motion for summary judgment, plaintiff indicates that he abandons his claims in Count VIII of the Complaint. Therefore, summary judgment will be granted on Count VIII of the Complaint.

**V. Conclusion**

Accordingly, for all the reasons stated herein, Defendants' Motion for Summary Judgment (Doc. No. 44) is **GRANTED** as to all claims in this suit.

**IT IS SO ORDERED.**

Date: June 20, 2016　　　　　　　　　　　　　　**/S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge